**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

In the Matter of the Seizure of:

One (1) Vessel (Victoria)
Registration Number PR-1268-AC,
Hull No. MZ 000()32F202, with two (2) each Suzuki 90 hp engines,

MISC NO. 20-420 (DRD)

**OPINION AND ORDER**

**I.     INTRODUCTION**

Pending before the Court is Claimant, Joshua Vélez-Santos' *Demand for Release of Seized Property Pursuant to the Civil Asset Forfeiture Reform Act of 2000*. *See* Docket No. 1. Claimant also requests an evidentiary hearing as to this matter. *See* Docket No. 4. The United States of America filed its *Response in Opposition* thereto. *See* Docket No. 3.

On June 29, 2020, the United States Customs and Border Protection, Fines and Penalties and Forfeitures Division (hereinafter, "CBP") seized the above described property, to wit: One (1) Vessel (Victoria), Registration Number PR-1268-AC, Hull No. MZ 000()32F202, with two (2) Suzuki 90 hp engines, under the provisions of 18 U.S.C. §§ 981 and 982, for violation of 18 U.S.C. § 1956 "because there is reason to believe that it was used or intended to be used, in any manner or part, to commit or to facilitate the commission of an illegal activity." *See* Docket No. 3, Exhibit 1.

As a result thereof, an administrative complaint was filed by the United States Customs and Border Protection, Fines and Penalties and Forfeitures Division against the above described property. *See id.* The date of Notice was August 3, 2020. *See id.* According to the complaint, the domestic value of the property is $9,000.00. *See id.* Thereinafter, Claimant executed an administrative claim dated August 31, 2020, which was sent to the CBP through the United States Postal Service's (hereinafter, "USPS") certified mail service. *See* Docket No. 1, Exhibit 2. Although the letter provided that "pursuant to Title 18, United States Code,

Section 983(a)(2)(c), the request for court action has to be made within 35 days of the mailing of the Notice of Seizure (NOS)," Mr. Vélez-Santos' claim was received at the agency on September 8, 2020, to wit, one (1) day after the expiration of said term. *See* Docket No. 3, Exhibit 4.

Claimant essentially asserts that his demand for return of seized property is "based upon the failure of the government to adhere to the statutory deadlines imposed by the Civil Asset Forfeiture Reform Act of 200 (hereinafter, "CAFRA") for requiring the filing of a[n] administrative claim within 35-days under 18 U.S.C. § 983(a)(3)." *See* Docket No. 1 at 1. Claimant seeks for the Court to issue an order declaring that the meaning of the phrase "claim has been filed" pursuant to 18 U.S.C. § 983(a)(3)(A) is that "the claim was received [by] the agency by the postal service, and not when the claim is received by a particular official." *Id.* Therefore, as the government violated the provisions of the statutes, the administrative claim is subject to equitable tolling herein.

In turn, the Government argues that the CBP mailed Claimant a *Notice of Seizure* on August 3, 2020, enumerating available options and deadlines as to the forfeiture of the property. *See* Docket No. 3 at 1; *see also*, Docket No. 3, Exhibit 1. Pursuant to the letter, Claimant could request court action "[o]n or before 35 days from the date of [the] letter." *See* Docket No. 3, Exhibit 1. Accordingly, Claimant had until September 7, 2020 to request court action. *See* Docket No. 3 at 2. Thereinafter, Claimant mailed CBP a verified claim of ownership requesting court action dated August 31, 2020 through the USPS. The Government argues that the claim arrived at the CBP on September 8, 2020, namely, "36 days from the date on the Notice of Seizure." *Id.*, at 2. Therefore, on October 1, 2020, Claimant was notified that his claim was deemed untimely and would not be referred to the United States Attorney's Office for court action, and instead would be treated administratively. *See id.*; *see also* Docket No. 3, Exhibit 3. Claimant could "file an administrative petition providing all the facts that [he] understands warrant relief from forfeiture." *See* Docket No. 3, Exhibit 3 at 1.

For the reasons stated herein, the Court **DENIES** Claimant, Joshua Vélez-Santos' *Demand for Release of Seized Property Pursuant to the Civil Asset Forfeiture Reform Act of 2000*. *See* Docket No. 1.

## II.     ANALYSIS

Pursuant to the United States Code, upon the seizure of property in a nonjudicial civil proceeding, "the Government is required to send written notice to interested parties, such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure." 18 U.S.C. § 983(a)(1)(A)(i). Accordingly, upon the receipt of the written notice, the interested party may file a claim with the appropriate officials. *See* 18 U.S.C. § 983(a)(2)(A). However, a claim "may be filed no later than the deadline set forth in a personal notice letter (which deadline may be not earlier than 35 days after the date the letter is mailed)." 18 U.S.C. § 983(a)(2)(B). Then, if a claim is timely filed, "the Government shall file a complaint for forfeiture" no later than 90 days upon receipt. 18 U.S.C. § 983(a)(3)(A). If a complaint for forfeiture or return the property is not filed, "the Government shall promptly release the property." 18 U.S.C. § 983(a)(3)(B).

"It has long been established that judicial review of an administrative declaration of forfeiture is limited to collateral due process attacks." *Custodio Colon v. Ayala*, 2005 WL 1971114 (D.P.R. Aug. 16, 2005). When a party files an untimely claim for court action before an agency, "[a] district court . . . lacks jurisdiction to review . . . except for determining whether the [agency] 'satisfied statutory and due process requirements.'" *$73,000.00 U.S. Currency v. United States*, 2017 WL 3437892, at *1 (W.D. Pa. Aug. 10, 2017) (*quoting United States v. McGlory*, 202 F.3d 664, 670 (3d Cir. 2002); *see also United States v. Giraldo*, 45 F.3d 509, 511 (1st Cir. 1995)(holding that district court has jurisdiction to entertain collateral due process attacks on administrative forfeitures). Accordingly, a claimant "cannot evade the jurisdictional barrier he faces . . . by framing his probable cause argument as a due process challenge." *$73,000.00 U.S. Currency*, 2017 WL 3437892 at *3. Therefore, "it would be inappropriate for the Court to entertain such equitable considerations in this case, since the unrefuted evidence demonstrates that [Claimant] was provided with an adequate remedy at law to challenge the [] administrative forfeiture proceedings, but chose not to pursue them in a timely manner." *$73,000.00 U.S. Currency*, *Id.* As a matter of fact, "[i]f no interested party files a claim, then

3

the [agency] administratively forfeits the property by default and the only option remaining for an interested party is to file a petition for remission or mitigation of the forfeiture." *Malladi Drugs & Pharm., Ltd. v. Tandy*, 552 F.3d 885, 887–88 (D.C. Cir. 2009).

## A.   *The Claim was Untimely Filed*

According to the Claimant, "[t]he Administrative claim executed . . . is dated August 31, 2020. The claim was sent [by] Certified Mail through USPS (Tracking Number 7018-2290-0001-6181-5720). This correspondence was received by 'someone' at the designed address belonging to CBP, on September 8, 2020, but the receipt showed that delivery was attempted on September 5, 2020." Docket No. 1, ¶ 2. However, the USPS Tracking results for the provided tracking number reflect that on September 5, 2020 at 7:58 a.m., namely, a Saturday, a delivery was attempted, yet, there was "no access to delivery location." Docket No. 3, Exhibit 4. As a result thereof, it is reasonable to conclude that USPS retained the letter until its delivery on September 8, 2020 at 2:49 p.m. when it was "delivered to an individual at the address." *Id.* The agency does not interfere in any way with the delivery of letters or packages. Said task is solely relied on the United States Postal Service.

## B.   *The meaning of the phrase "claim has been filed"*

Claimant seeks the Court to determine that the meaning of the phrase "claim has been filed" in 18 U.S.C. § 983(a)(3)(A) is that the claim was received for the agency by the postal service and not when the claim is received by a particular official. The Claimant does not dispute that the agency's written later was dated August 3, 2020 and that it clearly provided that he had thirty-five (35) days from the date on the written notice to request a referral for court action. It is also undisputed that if Claimant wanted to challenge the forfeiture of the property in a judicial proceeding, he would have to submit a claim with the agency no later than September 7, 2020. According to Claimant, his "administrative claim arrived at CBP's mailbox on September 3, 2020 and must be considered timely filed." Docket No. 1 at 6. The basis of this contention is

4

that when the letter was taken to the USPS for mailing an estimated[1] date of delivery was provided, namely, September 3, 2020. *See* Docket No. 1, Exhibit 2. However, an estimated date of delivery is not necessarily the date in which the mail is delivered. Moreover, there is nothing on the record that suggests the existence of a CBP mailbox where correspondence could have been delivered on September 3, 2020. The USPS Tracking Results clearly demonstrate that since there was no personnel on the CBP office on September 5, 2021, as it was a Saturday, the letter could not be delivered, and was ultimately "delivered to an individual" on September 8, 2020 at 2:49 p.m. Docket No. 3, Exhibit 4. But ultimately, a claim is deemed filed when it is received by an official of the agency not when the USPS attempts to deliver correspondence.

In any event, the phrase "claim has been filed" in 18 U.S.C. § 983(a)(3)(A) has been interpreted by federal courts and the Code of Federal Regulations (hereinafter, "CFR"). The CFR specifically provides that "an administrative claim is filed on the date when the claim is received by the designated appropriate official . . ." 28 C.F.R. § 8.2. Therefore, "the only possible meaning of receive is when the claim is delivered to the physical agency address. That is when the United States first exercises dominion over the claim. Courts around the country have come to the same conclusion." *In re Eight Thousand, Five Hundred Eight Dollars & Sixty-Three Cents ($8,508.63)* 2018 WL 3427635 at *6. Most critical, "[t]he CFR reasonably rejected a definition of 'filed' as the date the claim is mailed. In CAFRA, Congress used the term "mailed" but declined to use it here. *See* 18 U.S.C. § 983(a)(2)(B)[2]. Such a use highlights Congress' understanding that it could have defined "filed" as "the date the claim is mailed" but chose not to." *Id.*

Hence, pursuant to the interpretation provided by the CFR, the Court is forced to conclude that the claim was not filed until the CBP received the document on September 8, 2020. However, the Court notes that even if the phrase "claim has been filed" were to be interpreted as the date in which the letter was

---

[1] "[U]sed when saying what the cost, size, value, etc. of something is believed to be, although it is not known for certain." "Estimated". 2021. https://dictionary.cambridge.org/us/dictionary/english/estimated. (27 April 2021).

[2] "A claim under subparagraph (A) may be filed not later than the deadline set forth in a personal notice letter (which deadline may be not earlier than 35 days after the date the letter is mailed."

received at the agency's mailbox, although there is no evidence that suggests the existence of a mailbox, the USPS Tracking Results clearly demonstrate that the document was delivered at the agency on September 8, 2020 at 2:49 p.m. *See* Docket No. 3, Exhibit 4. Therefore, Claimant's contention that the phrase "claim has been filed" must be interpreted as the date in which the claim was received for the agency by the postal service is unfounded.

### C.     18 U.S.C. § 983 Deadline to File a Complaint for Forfeiture

Pursuant to section 983, "the Government is required to send a written notice to interested parties, such notice shall be sent in a manner to achieve a proper notice as soon as practicable, and in no case more than 60 days after the date of seizure." 18 U.S.C. § 983(1)(A)(i). Upon receipt of the notice, a party "may file a claim with the appropriate official after the seizure" which may be filed "no later than the deadline set forth in a personal notice letter (which deadline may not be earlier than 35 days after the date the letter is mailed)." 18 U.S.C. §§ 983(a)(2)(A) & (B).

Once the claim is filed by a party, and "[n]o[] later than 90 days <u>after a claim has been filed</u>, the Government shall file a complaint for forfeiture . . . or return the property pending the filing of a complaint, except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties." 18 U.S.C. § 983(a)(3)(A)(emphasis ours). Once the 90-day term elapses, the Government is barred from its ability to seize the funds. "In other words, once the claim has been filed with the agency, the clock on the claimant stops and the clock on the agency begins to run." *In re Eight Thousand, Five Hundred Eight Dollars & Sixty-Three Cents ($8,508.63)*, 2018 WL 3427635, at *4. As the Claimant did not file a complaint requesting court action within the 35-day period provided by statute, the Government's 90-day deadline to file a complaint did not start. Therefore, Claimant's contention that the Government failed to timely file a complaint for forfeiture is unfounded.

D.     *Equitable Tolling*

The doctrine of equitable tolling provides that in exceptional circumstances, a statute of limitations "be extended for equitable reasons not acknowledged in the statute creating the limitations period." *David v. Hall*, 318 F.3d 343, 345–46 (1st Cir. 2003). "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). In fact, "[m]ere excusable neglect is not sufficient." *Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 619 (3d Cir. 1998). Therefore, in order to demonstrate that a claimant is entitled to equitable tolling, he must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 2562, 177 L. Ed. 2d 130 (2010).

Claimant argues that "[t]he 'extraordinary circumstance' is based in this office extremely prejudicial delay in handling this administrative claim." Docket No. 1 at 7. However, Claimant's assertion is insufficient as there is no specification as to the office that he's referring to, whether it be, the US Postal Service, the CBP, the Attorney's Office or even his own attorney's office. No additional facts are provided in support of his contention that he is subject to equitable tolling, particularly, as to the alleged "extremely prejudicial delay in handling this administrative claim." Most critical and determinative, the First Circuit has consistently held that "[i]t is not enough merely to mention a possible argument in the most skeletal way [. . .] judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

Finally, the Eleventh Circuit addressed a situation similar to the one at issue, and denied equitable tolling for the following reason,

> Sandvik's motion was late because his lawyer sent it by ordinary mail from Atlanta less than a week before it was due in Miami. While the inefficiencies of the United States Postal Service may be a circumstance beyond Sandvik's control, the problem was one that Sandvik's counsel could have avoided by mailing the motion earlier or by using a private

7

delivery service or even a private courier. There is not, therefore, ground for equitable tolling here.

*Sandvik,* 177 F.3d at 1272. As the document was sent by Certified Mail, such service includes a tracking number which indicates the location of the document and whether it has been delivered. Nothing prevented Claimant from verifying the location of the document, and from taking additional measures when realizing that the document potentially could not arrive on time. Among the services that were available to timely deliver the letter were a private delivery service, a private courier and even by counsel personally delivering the letter to the agency. Therefore, Claimant's request for equitable tolling is unfounded.

### III. CONCLUSION

For the aforementioned reasons, Claimant's *Demand for Release of Seized Property Pursuant to the Civil Asset Forfeiture Reform Act of 2000* is hereby **DENIED.** As all elements regarding the instant controversy have been filed and reviewed by the Court, and finding that the information and evidence provided is sufficient to rule upon the pending motion, the Court **DENIES** *Claimant's Request for Evidentiary Hearing* (Docket No. 4).

Judgment of dismissal with prejudice is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 4th day of May, 2021.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge